**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

|  |  |
|---|---|
| ESSEX INSURANCE COMPANY,            )<br>                                                        )<br>                          Plaintiff,      )<br>                                                        )   C.A. No.: 9:07-CV-0470-PMD<br>v.                                                    )<br>                                                        )<br>                                                        )             **ORDER**<br>THE GREAT PUMPKIN, LLC, d/b/a    )<br>BATTERY CREEK MARINA VILLAGE, )<br>INC., RICHARD K. McELVEEN, SR.,   )<br>and MATTHEW S. McALHANEY,        )<br>                                                        )<br>                          Defendants.  )<br>_____) | |

This matter is before the court on Plaintiff Essex Insurance Company's Motion for Summary Judgment. Plaintiff has filed an action requesting a declaratory judgment from this court that its insurance policy issued to Defendant The Great Pumpkin, LLC, and Defendant Battery Creek Marina Village, both of which are owned and operated by Defendant Richard K. McElveen, Sr., does not cover liability incurred for defamation of the type alleged in the present case. Therefore, Plaintiff asserts that it is under no obligation to defend claims against any of the aforementioned Defendants. For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is granted.

**FACTUAL BACKGROUND**

Defendant Richard K. McElveen, Sr. ("McElveen") is a Beaufort area businessman who is the sole officer of Defendant The Great Pumpkin, LLC ("The Great Pumpkin") and Defendant Battery Creek Marina Village, Inc. ("BCMV"). Plaintiff Essex Insurance Company ("Essex") issued an ocean marine insurance policy to BCMV on May 3, 2002, that covered BCMV from that date

until May 3, 2003. At that time, Essex issued a renewal policy to The Great Pumpkin, d/b/a BCMV, which covered that entity from May 3, 2003 until May 3, 2004.

McElveen and his wife claim to have taken over the parenting responsibilities for their two grandchildren, as they allege that McElveen's son and his ex-wife, the biological parents of the children, showed little interest in raising them, and were unable to provide a stable upbringing. On September 29, 2003, McElveen sent a letter to South Carolina Governor Mark Sanford on BCMV letterhead. The letter stated that McElveen's son's ex-wife (his ex-daughter-in-law), Molly McCullers McElveen, had recently begun dating Defendant Matthew S. McAlhaney ("McAlhaney"), a local realtor. The letter asserted that McElveen's ex-daughter-in-law wanted to raise her children with McAlhaney, but McElveen asserted grave doubts about the wisdom of such an arrangement, because he alleged that McAlhaney was a drug addict who abused the children. McElveen went on to state that numerous community members, including several of the childrens' teachers, had come forward to support McElveen's claims in a family court hearing, but that one witness who had spoken up for McAlhaney was Julia Sanford, a teacher at Beaufort Academy and Governor Sanford's sister-in-law. McElveen said that he was writing the Governor because he believed Julia Sanford "should be more cautious of her oral or written statements and opinions." (Letter at 1.) McElveen concluded by thanking the Governor for taking the time to read the letter and "for your hard work to make South Carolina a better place to live and work." (Letter at 2.)

On February 27, 2004, McElveen and his wife reported to police that McAlhaney had engaged in child abuse and child molestation with their grandchildren. As a result, McAlhaney was arrested for assault and battery and criminal sexual conduct with a minor. McAlhaney asserts that after this happened, McElveen continued to publicly state that McAlhaney had abused and molested

the grandchildren. Approximately one year after he was arrested, the solicitor's office dropped all charges against McAlhaney.

On July 9, 2005, McAlhaney filed suit against McElveen, The Great Pumpkin, and BCMV, alleging libel, slander, abuse of process, and conspiracy to commit assault and battery. McAlhaney alleges that throughout this process, McElveen acted as an agent or employee of the two business entities. Essex disputes this claim, claiming that McElveen was only acting in a personal capacity, and therefore that Essex is under no duty to defend McElveen, or to cover any liability McElveen may have in such an action.

Essex filed the present action, seeking declaratory judgment, on February 16, 2007. Essex asserts that McElveen's actions were entirely outside the scope of the business of The Great Pumpkin and BCMV, and was purely personal in nature, and therefore not covered by the Essex insurance policy.

On November 26, 2007, Essex filed the Motion for Summary Judgment currently before the court. On December 14, Defendants McElveen and The Great Pumpkin filed a Response in Opposition to this Motion. On that same date, Defendant McAlhaney also filed a separate Response in Opposition to Plaintiff's Motion. Plaintiff filed a Reply to these Reponses on December 20.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

Under South Carolina law, an insurer is responsible for providing legal defense on any underlying substantive claim that creates the possibility of coverage under an insurance policy. This court has previously held that:

> Pursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint. *Ellett Bros., Inc. v. U.S. Fid. & Fuar. Co.*, 274 F.3d 384, 387-88 (4th Cir. 2001) (citing *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, 277 S.C. 88, 90, 282 S.E.2d 856, 857 (1981)). If the facts alleged in the underlying complaint "fail to bring the case within the policy coverage, the insurer is free of the obligation to defend." *R.A. Earnhardt*, 277 S.C. at 290, 282 S.E.2d at 857. However, the complaint is construed liberally, with all doubts resolved in favor of the insured. "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15, 459 S.E.2d 318, 319 (Ct. App. 1994) (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468, 471, 265 S.E.2d 38, 40 (1980)). While the duty to defend is based on the allegations in the underlying complaint, the "duty to indemnify is based on evidence found by the factfinder." *Ellett Bros.*, 274 F.3d at 388. When findings of fact have not been made in the underlying lawsuit, the indemnity claim is not ripe. *Id.*

*Union Ins. Co. v. Soleil Group, Inc.*, 465 F.Supp.2d 567, 572-73 (D.S.C. 2006).

In the present case, Defendants argue that the original Complaint filed by McAlhaney alleged several causes of action which, construed liberally, would be covered by the policy issued by Essex covering Great Pumpkin and BCMV. Essex asserts that none of the alleged behavior in McAlhaney's Complaint is covered by the policy, and therefore there is no duty to defend on any of the causes of action.

The insurance policy contains the following relevant provisions. Under the Section entitled "Coverage B. Personal and Advertising Injury Liability," the policy reads:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.
> ...
> b. This insurance applies to:
>
> > (1) "Personal injury" caused by an offense *arising out of your business*, excluding advertising, publishing, broadcasting or telecasting done *by or for you*.

(Ins. Policy at 4) (emphasis added). The policy later defines "personal injury:"

> 13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> > a. False arrest, detention or imprisonment;
> > b. Malicious prosecution
> > ...
> > d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services

(Ins. Policy at 12.) In an endorsement document integrated into the policy, the policy contained a section entitled "Exclusions–Applies to All Sections and Coverage Forms," which provided that "[t]his insurance does not apply to any claim, suit, cost or expense arising out of:"

> C.   Punitive or Exemplary Damage:
>
> > Punitive or Exemplary Damages whether arising out of the acts of any insured, any employee of any insured or any other person.
>
> D.   Assault and/or Battery:
>
> > Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation of any insured, insured's employees, patrons or any other person.

(Endorsement at 2-3.)

The policy also specified exactly who was covered. In a section entitled "Section II–Who Is an Insured," the policy stated that,

1. If you are designated in the Declarations as:

    c. A limited liability company, you are an insured. Your members are also insureds, *but only with respect to the conduct of your business*. Your managers are insureds, *but only with respect to their duties as your managers*.

(Ins. Policy at 7) (emphasis added).

Taken in concert, the provisions of the insurance policy agreement between Essex and The Great Pumpkin make it pellucidly clear that managers and members of The Great Pumpkin–namely, McElveen–were insured by the policy for actions which caused personal injury to others only insofar as he was acting in his capacity as member or manager of the LLC. The issue on which Plaintiff's Motion for Summary Judgment turns, then, is whether McElveen was acting in his capacity as The Great Pumpkin's owner and operator, or whether he was acting as a private individual in writing the letter to Governor Sanford, making accusations about McAlhaney to others, and reporting McAlhaney to the police.

Defendants assert that Plaintiff's allegations, construed liberally as is required by law, create an issue of material fact as to whether McElveen was acting on behalf of The Great Pumpkin and BCMV. Defendants have two bases for this claim. First, McElveen wrote the letter on BCMV letterhead. Second, Defendants assert that certain language in the letter goes beyond merely pursuing a personal matter. Specifically, in the letter, McElveen thanks Governor Sanford "for your hard work to make South Carolina a better place to live and work." (Letter at 2.) According to Defendants McElveen and The Great Pumpkin, "Defendant McElveen's presentation of himself as a businessman in the Beaufort community through the use of the letterhead could certainly be found

to be in the furtherance of the business of the marina, and plaintiff underestimates the significance of the use of the company letterhead with respect to the coverage and defense issues here." (Defs.' Response in Opp. at 4.)

Defendants rely heavily upon the decision of the South Carolina Court of Appeals in *Murphy v. Jefferson Pilot Communications Co.* 364 S.C. 453, 613 S.E.2d 808 (Ct. App. 2005).  That case involved a television station news director who wrote a letter on the station's letterhead that made slanderous statements about a plaintiff.  The court held that the trial court's grant of a directed verdict in favor of the defendant was improper, and that "[i]f there is any doubt as to whether the servant was acting within the scope of his employment, the doubt will be resolved against the master at least to the extent of requiring the question to go to the jury." *Id*. at 462, 812.  However, the facts of that case are materially distinguishable from the facts of the case presently before the court.  In *Murphy*, the news director repeatedly said he was writing the letter and threatening the plaintiff with legal action in order to protect the television station in the letter, and signed the letter "Vice President/News Director." *Id*. at 457-59, 811.  Furthermore, the news director then distributed the letter to others, and claimed the letter had been written with the approval of the station manager. *Id*. at 463, 813.  The news director in that case was clearly holding himself out as acting on behalf of the television station.

Here, on the other hand, it is clear that McElveen's motive for writing the letter was personal.  He even admitted as much in the opening sentence of the letter, when he wrote, "I have a *personal* matter that has troubled me greatly."  (Letter at 1) (emphasis added).  At no point in the body of the letter does McElveen mention either The Great Pumpkin or BCMV.  McElveen then concluded the letter by writing, "[t]hank-you for your time in this matter, and Thank-you for your hard work to make South Carolina a better place to live and work." *Id*. at 2.  McElveen never

explicitly represented himself as a businessman, or mentioned his control over BCMV and/or The Great Pumpkin. The letter is entirely concerned with the personal matter of who will and should have custody of McElveen's grandchildren. Other than the fact that the letter was written on BCMV letterhead, there is simply no basis for thinking that McElveen was acting in anything other than a personal capacity. The mere fact that a letter was written on a company's letterhead is legally insufficient to establish liability on the part of the company. *See, e.g.*, *Charleston, S.C. Registry for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP*, 359 S.C. 635, 598 S.E.2d 717 (2004) (a law firm associate's use of law firm letterhead in correspondence on behalf of another venture was insufficient to show that he was acting on behalf of the law firm).

It is difficult to conceive of any subject more intensely personal than a situation where there is a disagreement among family over who should have custody of children. Throughout the time period in question, McElveen was focused on preventing McAlhaney and Molly McElveen from obtaining custody of his grandchildren. In his efforts to do this, he levied extraordinarily serious accusations against McAlhaney, through his letter to Governor Sanford, his reports to the police, and through less formal interactions with other members of the community. But there is no evidence anywhere in the record that McElveen's actions were motivated by any sort of professional considerations, or that any reasonable observer would believe McElveen was acting in a business capacity. Frankly, the court cannot see how McElveen's actions of accusing McAlhaney of being a child abuser and a child molester would benefit his personal reputation, standing in the community, or result in any sort of concrete benefit to his business, which involved the servicing, fueling, storage, and maintenance of boats.

If any of McAlhaney's causes of action are covered by the policy, then the insurance company is obligated to defend on all causes of action. *See Ellett Bros.*, 275 F.3d at 388 ("If the suit

includes any cause of action covered by the policy, the insurer must defend, even if the suit joins other causes of action beyond the policy's scope.").

However, in the present case, none of McAlhaney's causes of action are covered by the policy, and therefore Essex has no duty to defend in the case. The insurance policy clearly stipulates that The Great Pumpkin is the insured, and that McElveen falls under the category of "insured" only with respect to his conduct as a member or manager, which is not the capacity in which he was acting in the facts at issue here. The policy also covers personal injury claims "caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you." (Ins. Policy at 4.) Here, Defendants have produced no evidence that McElveen's actions somehow arose out of his business of running a marina. With regard to McAlhaney's claim for conspiracy to commit assault and battery, this claim is explicitly excluded by the Endorsement.

The law is very clear that when construing the scope of insurance coverage for the purpose of determining whether an insurance company has a duty to defend or not, all ambiguities are to be resolved in favor of the insured. However, in the present case there is no ambiguity. The only support Defendants can offer for their proposition that McElveen was acting in his capacity as owner and sole officer of BCMV and The Great Pumpkin is the fact that he wrote his letter to Governor Sanford on BCMV letterhead and, in the last sentence of the letter, thanked Governor Sanford for all of his efforts to make the state of South Carolina a better place to live and work. These assertions plainly fail to establish an issue of material fact.

## CONCLUSION

For the foregoing reasons, the court **ORDERS** that the Plaintiff Essex Insurance Company's Motion for Summary Judgment be **GRANTED**, and issues a declaratory judgment on behalf of Plaintiff that there is no duty to defend Defendant Richard K. McElveen, Sr. against the various claims made by Defendant Matthew S. McAlhaney.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 26, 2008**